KLONOWSKI, Plaintiff in error, v. STATE, Defendant in error.

*No. State 167.   Argued May 5, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 637.)

608

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Victor A. Miller,* attorney general.

HANLEY, J.   Two issues are presented on this appeal:

1. Did the trial court err in denying the motion to suppress statements made by the defendant?

2. Did the trial court err in denying the motion to suppress certain evidence found in the automobile but not particularly described in the search warrant?

*Unreasonable detention.*

The defendant's first argument is that the statements he made on the afternoon of April 16, 1973, should have

been suppressed as being statements made during an unreasonable detention before he was brought before a magistrate.

In *Phillips v. State* (1966), 29 Wis. 2d 521, 534, 535, 139 N. W. 2d 41, this court said:

". . . [T]he right to interrogate after arrest is limited and must be for the purpose of determining whether to release the suspect or if he has been arrested without a warrant to make a formal complaint. . . . A detention for a period longer than is reasonably necessary for such limited purpose violates due process and renders inadmissible any confession obtained during the unreasonable period of the detention."

It was further said (p. 535) :

". . . While one may be detained by the police and interrogated to secure sufficient evidence to either charge him with a crime or to release him, the police cannot continue to detain an arrested person to 'sew up' the case by obtaining or extracting a confession or culpable statements to support the arrest or the guilt. . . ."

In *Krueger v. State* (1972), 53 Wis. 2d 345, 357, 192 N. W. 2d 880, this court clarified the *Phillips* rule against "sew-up" confessions:

". . . A confession does not become inadmissible as a 'sew-up' confession merely because the state, prior to the confession, had information sufficient to sustain a charge. The question revolves solely on the point whether the delay was inordinate and the detention illegal. . . ."

This rule was recently reiterated in *McAdoo v. State* (1974), 65 Wis. 2d 596, 609, 223 N. W. 2d 521:

"Any statement, even if voluntarily given by an accused, will be held inadmissible if made during a period of unreasonably long detention. *State v. Estrada* (1974), 63 Wis. 2d 476, 490, 217 N. W. 2d 359; *State v. Wallace, supra,* page 75; *State v. Hunt* (1972), 53 Wis. 2d 734, 741, 193 N. W. 2d 858."

While these cases indicate that any confession made during an unreasonably long detention are inadmissible, there are cases stating that the purpose of the rule is to prevent an accused from having his resistance weakened by the psychological coercion of being detained and "worked upon" by the police to secure evidence. *Embry v. State* (1970), 46 Wis. 2d 151, 160, 174 N. W. 2d 521. In *Davis v. State* (1967), 33 Wis. 2d 682, 684, 148 N. W. 2d 53, it was said that *Phillips v. State, supra,* ". . . related to so-called 'sew-up' confessions wherein an accused has been interrogated for a long period of time before being brought before a magistrate."

In *Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525, this court was confronted with a contention that three statements should be excluded under the *Phillips* rule. In that case, the defendant turned himself in at the jail at about 11:55 p.m. on November 9, 1963, telling the undersheriff he wanted to make a statement. He was "booked" and placed in a cell because the undersheriff was too busy at the time. After investigating the incident involved, the sheriff got the defendant up at 1:30 a.m. and took a statement from the defendant which was written down by the undersheriff and signed by the defendant. The next morning, the statement was typed and then signed by the defendant. On the morning of November 12, 1963, a third statement was given at the request of the defendant. This court noted that "Upon its face, a detention from midnight Saturday until 10 a.m. Tuesday, without satisfactory explanation, would be unreasonable." (p. 470) This court refused to exclude the third statement for two reasons, either of which would have been sufficient to sustain the statement's admissibility:

"First, it was taken at the request of the defendant, and second, the statement does not refer to the incidents of the crimes for which he was convicted." (p. 470)

It is the first reason given in *Reimers* which is relied upon by the state here.

The second contention of the state is that *Phillips* should only be applied where the unreasonable period of detention has been used by the police as an occasion to "work upon" the defendant in order to secure a "sew-up" confession. This is the real evil which the *Phillips Case* sought to correct.

In a recent decision, the Michigan Supreme Court reiterated its rule that:

"Only when the delay has been employed as a tool to extract a statement has an exclusionary rule been imposed . . . ." *People v. White* (1974), 392 Mich. 404, 424, 221 N. W. 2d 357.

There the court noted that the defendant had requested to make one of the statements in question more than thirty hours after his arrest, but before he was brought before a magistrate.

In this case, the defendant volunteered a statement without being subjected to any interrogation. The defendant and a deputy sheriff were having a cup of coffee at the county hospital when the defendant stated: "They got me charged with rape; it wasn't rape." The deputy immediately advised the defendant of his rights, but he indicated he wanted to make the statement. Since the statement was not made in response to any interrogation, it is a volunteered statement.

We conclude that the statement in question is not subject to the exclusionary rule under *Phillips* for two reasons: First, it was a volunteered statement taken at the request of the defendant, and second, it was not the result of the defendant's being "worked upon" by the officers in order to obtain a "sew-up" confession. Very little, if any, questioning of defendant had taken place prior to his making the statement. The trial court did not err in denying the defendant's motion to suppress his statement.

*Search of the automobile.*

The defendant does not challenge the issuance of the search warrant or the seizure of the automobile. Rather, he contends that the court should have suppressed certain items found in the automobile and taken to the state crime laboratory which were not particularly described in the search warrant.

The search warrant provided for the seizure of the automobile and the conveying of it to the sheriff's garage and the examining of it, "particularly for a tape deck, placement of the interior light bulbs, the existence of any bloodstains and any Tampax or similar type of female sanitary napkin and such other evidence as may be found." Objection is to only certain items listed as being found in the inventory and turned over to the state crime laboratory. These items are the sweepings, the comb, the hair brush, the hair, the eyeglass lens, the small bunny and the door handle. No objection is raised as to the rear seat, the tape cassette or the sanitary napkin found in the vehicle.

The defendant makes two arguments in support of his contention that the items seized pursuant to the search warrant should have been excluded from evidence. First, he argues that the search warrant failed to meet the particularity requirement of the fourth amendment that ". . . no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Also, the defendant contends that under *Myers v. State* (1973), 60 Wis. 2d 248, 208 N. W. 2d 311, the items objected to could not be seized under this search warrant because they were not particularly described and did not meet the four requirements set forth in that case. In *Myers,* this court said (p. 261) :

"In *United States v. McDonnell* (D. C. Neb. 1970), 315 Fed. Supp. 152, 168, that court set forth the following

standard which we adopt with respect to items of property seized but not particularly described in the warrant, to wit:

" '. . . An officer may seize any property which is evidence of a crime, whether or not different from the crime by which the search was prompted, if: (1) the evidence is discovered in the course of a lawful search, whether initiated by a valid search warrant, a valid arrest warrant, circumstances justifying a lawful warrantless search, or circumstances justifying a lawful warrantless arrest, (2) the evidence in itself or in itself with facts known to the officer prior to the search, but without the necessity of subsequent development of additional facts, provides a connection between the evidence and criminal activity, (3) the evidence is discovered in the physical area properly searchable within the purposes for which the search was initiated, and (4) the evidence is discovered while the officer is actually searching for objects within the purpose for which the search was initiated.' "

No questions are raised as to the first, third and fourth requirements considering the purpose of the search in this case. The hair samples fall within the second category in that these could conceivably be used for identification. The sweepings and door handle could fall within the description given in that the search included a search for any bloodstains. The remaining items, *i.e.*, the comb, hair brush, eyeglass lens and small bunny could not in any event constitute evidence of probative value in this case. They were merely inventoried surplus items. Therefore, the trial court was not required to grant the motion to suppress.

We conclude that the defendant's contentions regarding the seizure of the evidence in question are without merit.

*By the Court.*—Judgment affirmed.